IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 2, 2010

**JAMES JOHNSON, JR. v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 00-03451   John T. Fowlkes, Jr., Judge**

—————

**No. W2010-00380-CCA-R3-PC  - Filed May 12, 2011**

—————

Petitioner, James Johnson, Jr., was convicted by a Shelby County Jury for one count of second degree murder, and the trial court sentenced Petitioner to twenty-three years. *State v. James Johnson*, No. W2003-02009-CCA-R3-CD, 2004 WL 2378256, at *1 (Tenn. Crim. App., at Jackson, Oct. 20, 2004), *perm. app. denied,* (Tenn. Mar. 21, 2005). On appeal, this Court modified Petitioner's sentence to twenty-one years based upon the fact that the trial court had misapplied certain enhancement factors during sentencing. *Id.* at *14. On March 27, 2006, Petitioner subsequently filed a petition for post-conviction relief arguing that he received ineffective assistance of counsel. Following a hearing on the petition, the post-conviction court denied the petition. Petitioner appeals this decision. After a thorough review of the record, we conclude that Petitioner has not shown that trial counsel's representation was ineffective. Therefore, we affirm the denial of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J. and JOHN EVERETT WILLIAMS, J., JOINED.

Gregg Carman, Memphis, Tennessee, for the appellant, James Johnson, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter, Brian Clay Johnson, Assistant Attorney General; William L. Gibbons, District Attorney General, and Rachel Newton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

The Shelby County Grand Jury indicted Petitioner for one count of first degree murder for the March 2000, murder of Carolyn Payne. The autopsy showed that the victim had been stabbed thirty-five times, nine of which were significant. *Id.* at *3. A jury convicted Petitioner of the lesser included offense of second degree murder. *Id.* at *1. The trial court sentenced Petitioner to twenty-three years. *Id.* Petitioner appealed both his conviction and sentence to this Court. *Id.* The second degree murder conviction was affirmed, but this Court modified Petitioner's sentence to twenty-one years based upon the misapplication of enhancement factors under *Blakely v. Washington*, 542 U.S. 296 (2004). *Id.* at. *14.

On March 7, 2006, Petitioner filed a pro se petition for post-conviction relief. Counsel was appointed, and an amended petition was filed on September 19, 2007. On February 21, 2008, Petitioner filed an ex parte motion for expert defense services to hire an independent medical expert for the post-conviction hearing to "examine his defensive wounds". The State filed a response requesting the denial of Petitioner's request because Tennessee Supreme Court Rule 13, section 5(2) and *Davis v. Tennessee*, 912 S.W.2d 689 (Tenn. 1995), do not authorize funding for experts in non-capital post-conviction proceedings. Petitioner was not allowed funding for an expert.

On November 13, 2009, the post-conviction court held a hearing on the petition. Petitioner was the first witness. He testified that in his petition he alleged that he received ineffective assistance of counsel. Petitioner maintained throughout the trial process that he was defending himself from the victim's attack when the stabbing occurred. He stated that his main concern was that trial counsel did not procure an expert witness to testify regarding the wounds he suffered in the altercation with the victim. Petitioner received a cut to his left abdomen, a stab wound on his forearm, a stab wound on his right wrist, and a cut on the back of a finger on his right hand. According to Petitioner, these wounds were sustained while he was defending himself from the victim's attack. The argument was about money that the victim owed Petitioner. Petitioner stated that he informed trial counsel both by letter and in person that he believed they needed an expert to testify about the defensive wounds to support the theory of self-defense.

On cross-examination, Petitioner stated that he testified on his own behalf at the trial. He stated that trial counsel brought out information regarding the defensive wounds and even had Petitioner show the wounds to the jury.

Trial counsel also testified at the hearing. He stated that he had been an attorney for sixteen or seventeen years and over ninety percent of his practice was criminal law. Trial counsel stated that Petitioner maintained the same story throughout the proceedings that the

victim attacked him first. Trial counsel determined that the theory for trial would be self-defense. While preparing for trial, trial counsel was concerned that the testimony of the medical examiner, Dr. O. C. Smith, would be detrimental to their self-defense case, primarily because the autopsy showed that the victim had been stabbed thirty-five times. However, in discussions with Dr. Smith, trial counsel discovered that Dr. Smith's opinions were actually favorable to Petitioner. Trial counsel stated the following at the hearing:

[W]e met with Dr. Smith several times and right before trial, and like I said, . . . Dr. Smith's opinions became favorable to us. I had asked him details surrounding the facts that [Petitioner] had given over to me and took those details to Dr. Smith and asked him, well, what if – if this were the set of facts, what would your opinion be? And it turned out that his opinion was favorable to us. Found that only I believe three of the 35 wounds ended up being fatal. He agreed with us that the wounds could be consistent with a struggle instead of – cause basically what happened is [the State] had gone with the theory that these extra wounds on the victim were what they call flick wounds. And Your Honor has probably heard of that many times. But it's a method of torture is what their theory was. And after meeting with Dr. Smith several times telling him the information and facts that we knew about the case, Dr. Smith backed off the fact that these could be flick wounds and that it would support our theory that a fight had occurred.

And I think we even asked him the questions in trial about [Petitioner's] wounds and he agreed that they indeed could of been inflicted with a knife; they indeed could of been inflicted at the same time that his all occurred; that the wounds seemed to be the same age; that they could have dated back to when all of this had happened. So O. C. Smith became our expert is basically what we did. And at that point we've now – we don't have a disfavorable witness to discredit at that point. Dr. Smith has become a favorable witness. And his opinion – we went to [the assistant district attorney] with his opinion and [the assistant district attorney] agreed to pull the death penalty off the table because of that. That was his reason for doing that. And he agreed that that was favorable to us and that now self-defense was a fact issue for the jury to determine and he withdrew the death penalty.

. . . .

. . . Dr. Smith was a witness called by the State. But a lot of times in these trials, you can take a State's expert and it often looks better if the State

expert is favorable to your position. And he really became an expert that we used. And he was able to back up our theory of [Petitioner's] wounds. He was able to back up our theory that there wasn't torture here. He was able to back up our whole theory that there was a mutual combat altercation type of thing. That some of these wounds that occurred were defensive wounds to a knife, you know, someone holding their hand up. And we got all into that with Dr. Smith.

Trial counsel stated that he and co-counsel discussed whether or not to call an expert at length. After their discussions with Dr. Smith, they determined that Dr. Smith's testimony was sufficient and an expert witness would not have added anything to their case.

After the hearing on the petition, the post-conviction court denied the petition. The post-conviction court made the following findings with regard to the failure to hire an expert witness:

> This tactical move did not prejudice the defendant. In fact, trial counsel's lengthy conversations with Dr. Smith may have played a role in the jury finding the Petitioner guilty of the lesser included offense of second degree murder, rather than first degree murder. As in Henley v. State, courts should not second guess tactical and strategic decisions of trial attorneys without first constructing the events [sic] made by counsel and looking at them through counsel's perspective at the time. Henley v. State, 960 S.w.2d 572, 579 (Tenn. 1997). When doing so, counsel's conduct of not hiring a second expert does not rise to the level of ineffective assistance of counsel.

The Petitioner filed a timely notice of appeal.

## ANALYSIS

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim .App. 1997). This Court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the

post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins*, 911 S.W.2d at 347. This Court may not second-guess a reasonably based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

We conclude that trial counsel's decision not to retain an expert witness was a tactical decision. It is clear that trial counsel was well-prepared for this decision having had multiple conversations with Dr. Smith. He also discussed the decision with his co-counsel. Trial counsel clearly stated that he believed it was preferable to have a State witness testify favorably towards Petitioner as opposed to having a separate expert witness. For this reason, Petitioner has failed to prove the first *Strickland* prong, that trial counsel was ineffective.

## **CONCLUSION**

For the foregoing reasons, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____
JERRY L. SMITH, JUDGE